820 F.2d 1220
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C. Andrew RUSSELL; Samuel S. Zacharias; T. Bob Investments
Inc., an Ohio corporation, Plaintiff-Appellant,
v.
DONALDSON LUFKIN & JENRETTE SECURITIES CORP., a New York
corporation, Defendant-Appellee,
and
Energy Exchange Corporation, a Delaware corporation; Warren
Haught, an individual; Barry Haught, an individual; Warren
Associates, Inc., a West Virginia corporation; Haught
Energy Corporation, a West Virginia corporation; Glenn L.
Haught & Sons, a West Virginia general partnership; W & K
Oil Company, a West Virginia general partnership; VH Joint
Venture, a West Virginia general partnership, Defendant.
 No. 86-1719.
 United States Court of Appeals, Fourth Circuit.
 Argued March 3, 1987.
Decided June 4, 1987.
 
 Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Louis John Krzemien (Mansmann, Cindrich & Titus, on brief), for appellant.
 George Wailand (Leslie Kazon; Cahill, Gordon & Reindel; Thomas N. McJunkin; Gale R. Lea; Jackson, Kelly, Holt & O'Farrell, on brief), for appellee.
 PER CURIAM:
 
 
 1
 C. Andrew Russell, Samuel S. Zacharias and T. Bob Investments, Inc., (hereafter collectively referred to as "T Bob") filed this action for breach of contract, fraud, outrage, and unjust enrichment against a number of defendants, including Donaldson Lufkin & Jenrette Securities Corp. (DLJ). The district court granted summary judgment to DLJ on all of T Bob's claims against it. T Bob now appeals that judgment with respect to its breach of contract and fraud claims only. We affirm.
 
 
 2
 In June 1981, Russell and Zacharias received a Soliciting-Dealer Agreement from Crown Financial Corporation, which requested their participation as soliciting dealers in an enterprise by which Energy Exchange Corporation (EEC) proposed to exchange shares of its common stock for oil and gas properties. Crown was acting as the dealer-manager for the proposed exchange.
 
 
 3
 Russell and Zacharias had for some time engaged in business dealings with Warren Haught and his associates, who apparently owned considerable gas properties in West Virginia. Russell and Zacharias presented the EEC proposal to Haught and in September 1981 the three reached an agreement expressing Haught's interest in participating in the exchange. Under the Haught agreement, Russell and Zacharias were to receive four percent of the exchange value if Haught exchanged his interests for EEC shares. Contemplating the consumation of the transaction, Russell and Zacharias assigned the agreement to T Bob, which was a member of the National Association of Security Dealers.
 
 
 4
 On October 20, 1981, T Bob and Crown executed the Soliciting-Dealer Agreement originally circulated to Russell and Zacharias. Under its terms, T Bob would receive $.40 per share exchanged by EEC for the Haught properties. In January 1982, however, T Bob was advised by Crown that DLJ would replace Crown as the dealer-manager. In June 1982, another Soliciting-Dealer Agreement was submitted to T Bob, but this time by DLJ. T Bob executed it and returned it to DLJ.
 
 
 5
 Two provisions of the 1982 Soliciting-Dealer Agreement are pertinent to this controversy. First, the parties agreed that the 1982 agreement superseded the 1981 agreement executed by Crown and T Bob.
 
 
 6
 This Agreement supersedes any prior agreements, written or oral, which you may have entered into to act as Soliciting Dealer with respect to the Exchange Offer, or any understandings which you may have had with respect to the Exchange Offer, and contains all agreements with respect to your participation as Soliciting Dealer in the Exchange Offer. You hereby waive any claims which you may have against any broker-dealers and the Company and agree that all prior agreements which you may have entered into with respect to the Exchange Offer shall be considered null and void with no force or effect.
 
 
 7
 The second provision of the 1982 agreement specifically relieved DLJ from any obligation for the payment of compensation to soliciting dealers as follows:
 
 
 8
 The payment of compensation to Soliciting Dealers shall be solely the responsibility of the Company, and the Dealer Manager [DLJ] shall have no obligation or liability to any Soliciting Dealer for the payment of compensation.
 
 
 9
 T Bob, acting as a soliciting dealer, secured the transfer of the Haughts' gas property to EEC in exchange for shares of the latter's common stock, but received no compensation. It then brought this action against EEC, the Haughts and DLJ. DLJ moved to dismiss the various claims against it. The district court converted the motion into one for summary judgment and granted it.[1]
 
 
 10
 T Bob contends that the district court improperly resolved a genuine issue of material fact in deciding that the 1982 agreement governed the relationship between T Bob and DLJ. We disagree. The language of the 1982 agreement clearly and unambiguously superceded all prior agreements between T Bob and DLJ. Their relationship is controlled by the 1982 agreement.
 
 
 11
 T Bob next argues that, even if the 1982 agreement controls, DLJ breached its obligation to resolve disputes over the amount of compensation payable to soliciting dealers. We find no merit to this argument. The 1982 agreement provides that "[t]he payment of compensation to Soliciting Dealers shall be solely the responsibility of [EEC] and ... [DLJ] shall have no obligation or liability to any Soliciting Dealer for the payment of compensation."
 
 
 12
 Likewise, we find no error in the trial court's grant of summary judgment on the fraud claim. DLJ simply made no representation on which T Bob could have relied.
 
 
 13
 In view of the above, the judgment of the district court is affirmed.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 T Bob's action against the other defendants remains